### SABINE HARDWOOD CO. v. HOUSTON OIL CO. OF TEXAS et al.
#### No. 518.

District Court, E. D. Texas, Beaumont Division.

April 14, 1936.

W. D. Gordon and Thomas J. Baten, both of Beaumont, Tex., James F. Parker, of Kountze, Tex., E. E. Easterling, of Beaumont, Tex., and Ocie Speer, of Austin, Tex., for the motion.

George D. Sears, Fred L. Williams, Jesse J. Lee, Williams, Lee, Sears & Kennerly, Daffan Gilmer, E. J. Fountain, Jr., and Andrews, Kelley, Kurth & Campbell, all of Houston, Tex., opposed.

ATWELL, District Judge.

On July 5, 1934, the complainants, Morris McLean, Village Mills Company, both citizens of Texas, and the Sabine Hardwood Company, a Louisiana corporation, brought their bill against the Houston Oil Company, a Texas corporation, the receiver of the Kirby Lumber Company, a Texas corporation, the Maryland Trust Company, the Republic Producing Company, a Delaware corporation, Lewis S. Zimmerman, Samuel W. Fordyce, Thomas S. Moffill, Samuel C. Davis, Ethan A. H. Shepley, of Missouri, David Hannah and E. H. Buckner, of Houston, Tex., praying for a temporary restraining order, for a receiver, for a final decree settling their right and title to a survey of land in Hardin county, Tex., and to order the respondents to cease trespassing thereon; for an accounting for all timber cut therefrom; for an accounting for all oil produced therefrom, and appropriated by respondents and a perpetual injunction enjoining the respondents from asserting any right, interest, or claim in any manner whatsoever thereto.

The bill claimed that there was jurisdiction in the national court, under section 1 of the Fourteenth Amendment, in that there had been a violation thereof by certain Texas courts, including the Supreme Court of that state.

It is alleged that the Hardin county land was granted to a Mexican who sought, by a void act, to vest title to certain parties who in turn passed the same to G. G. Clough and Edward McCarty, predecessors of complainants.

That Clough and others brought suit against certain unknown heirs for the purpose of quieting title, in which they recovered judgment. That such judgment became final on February 4, 1920, and became a fixed muniment of title divesting out of said Mexican, Arriola, the estate.

That the plaintiffs in that proceeding passed the title to the complainants. That on the 28th of September, 1929, another suit was filed in the state District Court of Hardin county, Tex., wherein the Houston Oil Company of Texas intervened, which suit was tried on the 4th of January, 1932, before State District Judge O'Brien. That the trial resulted in an unsatisfactory judgment to the trial judge, who set it aside, and the case was again assigned for trial in May, 1932. That the defendants and interveners in that suit thereupon filed an ex parte application before the Supreme Court of Texas, seeking an injunction against Judge O'Brien and the plaintiffs from further proceeding with that case. That no notice of any nature was given to the complainants, and that respondents "were admitted to an audience in the chambers of the Supreme Court of Texas, and there presented some sort of application, the nature of which your orators, until long subsequently thereto, were unfamiliar with and made certain statements ex parte to the members of that tribunal, the nature of which your orators are unable to assert, other than such application was made without notice or an opportunity to be heard on the part of your orators, had the effect on the mem-

bers of that court ordering the clerk to issue a restraining order enjoining and restraining the district judge and the plaintiffs in that case, and their attorneys, from trying said cause." That the first information that the complainants had, of what had happened, was secured from a newspaper. That the case was heard by the Supreme Court, later, and the complainants maintained that it had no jurisdiction. Houston Oil Co. v. Village Mills Co., 123 Tex. 253, 71 S.W.(2d) 1087. That "the Supreme Court, nevertheless, arbitrarily confirmed and approved its preliminary ex parte writ of prohibition, and perpetuated the same by a judgment on the 18th of April, 1934. That this action resulted in the denial to the complainants of their right to sue in the courts of Texas, and to recover their property in conformity with the Constitution and statutes of that state."

The bill then proceeds to aver that the respondents took vast quantities of merchantable pine timber from said land, converted it to their own use and benefit by selling the same and appropriating the proceeds. That the exact amount and value thereof are unknown to the complainants, and that an accounting is necessary to ascertain and fix and establish the amount of damages therefor. It is also alleged that the respondents moved oil machinery on the land and proceeded to drill wells, which resulted in discovering oil deposits and that they have continued to produce oil therefrom in large quantities which they are running into pipe lines and selling to refineries, and other oil users, as though they were the owners of such property, when in truth they are naked trespassers. That the exact quantity and amount of such oil thus seized and appropriated and the disposition thereof are all within the knowledge of the respondents, and unknown, except in a general way, to the complainant, but that the aggregate value is approximately $2,000,000. That it is essential and necessary that an accounting be had, not only as to the past, but as to the present and future appropriations of oils and minerals. That the land is of small value, apart from the timber and the oil, and that complainants will suffer irreparable injury unless injunctions issue. That the Kirby Lumber Company, one of the respondents, now in the hands of a receiver, is appropriating most of the timber and the same is being passed beyond the power of "retrievement or of compen-

sation," to the creditors, and sundry stockholders of said corporation "rendering it impossible that adequate relief could be awarded to your orators, apart from the directions of a court of equity, pursuant to the principles, and usages of equity, without which legal remedies are utterly inadequate." That as to the oil, it is claimed that "it is impossible to award adequate relief to the complainant as a matter of law, wherefore, the aid of a court of equity is essential in accordance with the sub-joined prayer of this bill, to afford the complainants protection of their just, legal and equitable rights in said property." It was also alleged that it would be inappropriate to stop the production of oil, but that it should be continued by the granting of a receivership, "clothed with such power as the justice and equity of the cause may incline Your Honor to impose." There were then seven' different equity prayers.

Upon presentment of the bill, District Judge Bryant issued an order, dated July 12, 1934, to show cause why a receiver should not be appointed and temporary injunctions granted.

The respondents made appearance in answer to those orders and moved to dismiss. The motions to dismiss were overruled. An amended and substituted bill was filed on October 18, 1934, in which the Sabine Hardwood Corporation, after having been granted leave, became the only complainant. The respondents were the same. The bill was somewhat amplified so as to cover twenty-four pages, and went somewhat into detail as to the payment of taxes, and alleged that the respondents, discovering that they could not defeat the complainant, "devised the plan to forestall by an unauthorized and arbitrary proceeding, primarily secured without notice and ex parte the inhibitions of your complainants' claims against them by writ of prohibition against the court constitutionally and exclusively empowered to hear and determine the case, thus effectively closing the door of the courts of Texas, against your orators, and thus delivering to its adversaries its invested properties and estates for arbitrary exploitation and appropriation."

The allegation as to the taking of timber, the sale and appropriation of the same, the necessity for an accounting, the taking of oil, the sale and appropriation thereof, and the necessity for an account-

ing, and the interposition of equity are repeated. The same allegation is made that the land is of small value apart from the timber and oil and that the timber is being appropriated by the Kirby Lumber Company and passing into the hands of its creditors and stockholders, and rendering it impossible that adequate relief could be awarded except by a court of equity. It also charges that it has been "denied access to the judicial tribunal in the state, and prohibited from presenting there for adjudication and redress its usurped and appropriated rights and estate, and the constitutional agency of the state, endowed with the sole and exclusive jurisdictional power and right to hear and determine and adjudicate such rights, being likewise by the arbitrary usurpation of the Supreme Court in the order of prohibition issued by it, not to hear, consider or adjudicate your orators' cause, your complainant has no further recourse or remedy than is here asserted before this Honorable Court to redress the wrongs and injuries inflicted upon it, of the nature and character hereinbefore stated, and to be protected in its guarantees of such right, by the national constitution against such usurpation and arbitrary action of an agency of the state, denominated, the supreme court of Texas." Then follows substantially the same equity prayers as were made in the original bill.

Answer was filed on September 23, 1935. A supplemental answer was filed on March 17, 1936. On March 10, 1936, Judge Bryant filed a disqualification. On February 21, 1936, the parties filed an agreement for the introduction of testimony.

The case came on for hearing on March 17, 1936. Upon that occasion it appeared that it would require a little more time to try it than was at my disposal, and it was reassigned for Tuesday, April 14, 1936. On that date the complainant presented a motion which was filed the day before, suggesting that the action was at law, and that the same should be transferred to that docket. In that motion the complainant "withdraws its prayer for injunction and receivership during the pendency of this suit, and stands upon its legal remedies incident to the law action."

When the case was called in March and a rough statement was made of the complainant's cause, the court suggested that it might be that the complainant could

not recover, since it sounded in ejectment, which could not be maintained by one out of possession except under certain circumstances. Choice v. Texas Co. (D.C.) 2 F.Supp. 160. The complainant's attorney contended that the bill was properly brought, and thereupon the court inspected the pleadings and concluded that equities were presented, and the case was set down for the April date as above shown.

The method of withdrawing the prayer for injunction and receivership was rather novel. No equity rules were followed. No amended bill was filed. It came after issue joined, and the cause was ready to proceed to trial. Likewise, all of the equitable remedies claimed and prayed for in the bill were not waived, withdrawn, nor dismissed.

In that state of the cause, the court ruled with the respondents, and declined to transfer it to the law docket. The complainant then announced in open court that it would stand on its motion and not offer any evidence, whereupon the court dismissed the bill.

█ Equity Rule No. 22 (28 U.S.C.A. following section 723) provides for the transfer of a suit commenced at equity which should have been brought as an action at law. In an equity suit a matter ordinarily determinable at law arising shall be determined in that suit without sending the case to the law side. Rule 28 (28 U.S.C.A. following section 723) gives the complainant the right to amend his bill before the defendant has responded, but after such response the complainant may amend only by consent of the respondent, or leave of the court; rule 47 (28 U.S.C.A. following section 723) fixes the time for taking testimony; rule 56 (28 U.S.C.A. following section 723) requires the case to be placed on the trial calendar after this time shall have passed, and rule 57 (28 U.S.C.A. following section 723) saves delays by denying continuances except as therein shown.

█ Leaving out of consideration the equity rules, however, and inspecting the bill, we find that it attempts to fix jurisdiction in this court on the ground that the Supreme Court of Texas, arbitrarily, not to say fraudulently, entered a judgment which deprived it of its property. It also represents that the land is practically valueless, and that the conversion of the timber and oil that had been taken therefrom re-

quired the equity powers of the court in appropriate accounting; that receivership, restraining orders, and injunctions were all necessary. The attempt to waive application for a receiver and for an injunction was most primitive, but even if effective, it left the complaint of the judgment by the Supreme Court of the state, and the highly important remedies of accounting. Neither of those considerations are at law. Each is the prerogative of the chancellor. Each is the child of the conscience—of equity. 21 C.J. 106; Tyler v. Savage, 143 U.S. 79, 12 S.Ct. 340, 36 L.Ed. 82; Storey, Equity Jurisprudence, §§ 66K, 67, 184, 191; Jones v. Bolles, 9 Wall. 364, 369, 19 L.Ed. 734.

■ Under section 723 of the Revised Statutes (28 U.S.C.A. § 384), the remedy at law, in order to exclude equity, must be as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity. Even where a legal remedy might be concurrent, the exercise of equity jurisdiction rests in the sound discretion of the court and depends upon the special circumstances disclosed. 21 C.J. 109.

■■ One who voluntarily invokes the equity jurisdiction of the court cannot subsequently urge that his complaint should have been dismissed because of the adequacy of the remedy at law. One who seeks affirmative equity relief is precluded from subsequently raising such objections. Unless the matter is wholly beyond the domain of equitable cognizance, an objection to the jurisdiction of equity must be taken at the earliest opportunity to entitle the party to insist upon it. While it is true that an adequate remedy at law may be recognized at any stage of the proceeding, such discovery is predicated upon the word "adequate."

Mr. Justice Pitney, in McGowan v. Parish, 237 U.S. 285, 296, 35 S.Ct. 543, 548, 59 L.Ed. 955, said that, " 'A court of equity ought to do justice completely, and not by halves;' and a cause once properly in a court of equity for any purpose will ordinarily be retained for all purposes, even though the court is thereby called upon to determine legal rights that otherwise would not be within the range of its authority."

Mr. Chief Justice Fuller, in Perego v. Dodge, 163 U.S. 160, 164, 16 S.Ct. 971, 973, 41 L.Ed. 113, said that, "Plaintiff, having voluntarily invoked the equity juris-

diction of the court, was not in a position to urge, on appeal, that his complaint should have been dismissed because of adequacy of remedy at law. Even a defendant, who answers and submits to the jurisdiction of the court, and enters into his defense at large, is precluded from raising such an objection on appeal for the first time."

In Kilbourn v. Sunderland, 130 U.S. 505, 9 S.Ct. 594, 32 L.Ed. 1005, is a review which freshens us in the memory, that where it is competent for a court of equity to grant the relief asked for, and it has jurisdiction of the subject-matter, the objection that the complainant has adequate remedy at law should be taken at the earliest opportunity and before the defendants enter upon a full defense. Equity may be invoked, although there is also a remedy at law, unless the remedy at law, both in respect of the final relief and the mode of obtaining it, is as efficient as the remedy at equity could confer under the same circumstances.

■ The adequate remedy at law which will deprive a federal court of jurisdiction in equity must be as certain, practical, prompt, efficient, and complete as the remedy in equity. Butler Brothers Shoe Company v. United States Rubber Company (C.C.A.8th Cir.) 156 F. 1, 21.

"The objection that equity is without jurisdiction because the complainant has an adequate remedy at law, should be taken at the earliest opportunity; and, if the subject-matter belongs to the class over which a court of equity has jurisdiction, it is too late to make such objection after the defendant has answered, and there has been a hearing before a master." Hapgood v. Berry et al. (C.C.A.8th) 157 F. 807.

This was a suit to recover on a contract in which it was necessary to state an account between the parties covering the transaction during the several years, and it was properly cognizable, by a court of equity.

■ While most of the authorities are based upon objections by the respondents to equity jurisdiction, the same reasons would seem to apply against the complainant's eleventh hour effort to avoid a hearing on a bill presented by itself, showing equitable grounds, and after the battle had been planned through many months of pleading and skirmish. There is no way to salvage

748

a cause at equity and save it from peril by merely abandoning a portion of the equitable grounds. So long as there remains an unmistakable equity in the bill presented by the complainant, he may not ask for its transfer to the law side, and refuse the contest which he, himself, has precipitated, when the transfer is denied.

It occurs to me, however, that upon the complainants' refusal to present testimony, and to go forward with the trial, after issue and after the cause had been placed on the calendar by agreement of all the parties, it is wise to dismiss without prejudice, rather than with prejudice, unless some wrong would result to the respondents. It is so ordered.